## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **GRUPO HGM TECNOLOGIAS** | ) | |
| **SUBMARINAS, S.A.,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:18-00430-TFM-N** |
| | ) | |
| **ENERGY SUBSEA, LLC and** | ) | |
| **ODDGEIR INGVARTSEN,** | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATIONS

This action is before the Court on the motion for default judgment under Federal Rule of Civil Procedure 55(b) (Doc. 15) filed by Plaintiff GRUPO HGM Tecnologias Submarina, S.A. ("Grupo"). The assigned District Judge has referred the motion to the undersigned Magistrate Judge for appropriate action under 28 U.S.C. § 636(a)-(b), Federal Rule of Civil Procedure 72, and S.D. Ala. GenLR 72(a). *See* (Doc. 19 at 2); (5/2/2019 electronic reference); S.D. Ala. GenLR 72(b). Defendant Oddgeir Ingvartsen has submitted *pro se* a document styled "Defendants Respond to Plaintiff Application for Default Judgement and this case overall" (Doc. 16), purportedly on behalf of both himself and Defendant Energy Subsea, LLC ("Energy Subsea"), that opposes Grupo's motion and also requests that this case be dismissed or transferred to a Florida court. Grupo subsequently submitted a reply in further support of its motion for default judgment (Doc. 18). To date, neither Defendant has submitted any additional filings with the Court. Upon consideration, and pursuant to § 636(b)(1)(B)-(C) and Rule 72(b)(1), the undersigned will recommend that the Court (1) deny Ingvartsen any relief requested in his *pro se*

response (Doc. 16), and (2) deny Grupo's motion for default judgment without prejudice.

## I. *General Legal Standards*

"When a defendant has failed to plead or defend, a district court may enter judgment by default.  Fed. R. Civ. P. 55(b)(2).  "Because of [the Eleventh Circuit Court of Appeals's] strong policy of determining cases on their merits, however, default judgments are generally disfavored.  While a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact, he is not held to admit facts that are not well-pleaded or to admit conclusions of law.  Entry of default judgment is only warranted when there is a sufficient basis in the pleadings for the judgment entered."  *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244-45 (11th Cir. 2015) (per curiam) (quotations, footnote, and some citations omitted).  *See also Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (" 'A default judgment is unassailable on the merits, but only so far as it is supported by well-pleaded allegations.' " (quoting *Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975))).

> Conceptually, … a motion for default judgment is like a reverse motion to dismiss for failure to state a claim. *See Wooten v. McDonald Transit Assocs., Inc.,* 775 F.3d 689, 695 (5th Cir. 2015) (stating in the context of a motion for default judgment, "whether a factual allegation is well-pleaded arguably follows the familiar analysis used to evaluate motions to dismiss under Rule 12(b)(6)").
>
> When evaluating a motion to dismiss, a court looks to see whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)

(quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)). This plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556, 127 S. Ct. at 1965).

*Surtain*, 789 F.3d at 1245.

Moreover, in cases involving a default judgment, "there must be strict compliance with the legal prerequisites establishing the court's power to render the judgment." *Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada*, 674 F.2d 1365, 1369 (11th Cir. 1982).

## II. *Procedural History*

Grupo commenced this civil action on October 4, 2018, by filing a four-count complaint (Doc. 1) with the Court against Ingvartsen and Energy Subsea. Grupo subsequently filed evidence indicating that Ingvartsen was served with the summons and complaint on October 11, 2018 (*see* Doc. 7), and that Energy Subsea was served on October 19, 2018 (*see* Doc. 11). Thus, Ingvartsen and Energy Subsea were required to serve their responsive pleadings by November 1 and November 9, 2018, respectively. *See* Fed. R. Civ. P. 12(a)(1). After those deadlines passed with no response from either Defendant, on Grupo's applications (*see* Docs. 12, 13) the Clerk of Court entered default against both Defendants on November 14, 2018, under Federal Rule of Civil Procedure 55(a). (*See* Doc. 14). Neither Defendant appeared in this action following entry of default, and on February 11, 2019, Grupo moved the Court for entry of default judgment against the Defendants under Federal Rule of Civil Procedure 55(b)(2). (*See* Doc. 15). The motion for default judgment

was served on the Defendants at the same addresses where they were served with the summons and complaint.   (*See* Doc. 15 at 3).

On February 22, 2019, Ingvartsen filed *pro se* a document styled "Defendants Respond to Plaintiff Application for Default Judgement and this case overall," purportedly on behalf of both Defendants.   (Doc. 16).   On February 27, 2019, the District Judge assigned to this case entered an order informing Ingvartsen that, as a non-attorney, he could not file a response or otherwise defend this case on behalf of artificial entity Energy Subsea.   (*See* Doc. 17).   The District Judge also stated that the Court would hold the motion for default judgment in abeyance until April 1, 2019, in order to allow both Defendants the opportunity to obtain counsel.   (*See id.*).   Finally, the District Judge directed Ingvartsen "to provide appropriate contact information to the Clerk of Court for the purposes of addressing the current issues before the Court."   (*Id.*).

The Court has heard nothing further from either Defendant since Ingvartsen filed his *pro se* response on February 22, 2019.   On April 8, 2019, Grupo filed a reply (Doc. 18) to Ingvartsen's response, noting that as of that morning it had "not received any notification that Defendants complied with the Court's directives."   On May 2, 2019, the District Judge entered another order noting the lack of additional filings from either Defendant and warning the Defendants "that the Court intends to proceed with this case including the Motion for Default Judgment with or without counsel for the Defendants."   (Doc. 19).   The District Judge further noted: "At present, the Court will only consider the letter previously received on behalf of

Defendant Ingvartsen. There is no appropriate response on file for Energy Subsea LLC." (*Id.*). Finally, the District Judge referred this action to the undersigned "pursuant to 28 U.S.C. § 636(b)(1) … for consideration and disposition or recommendation on all pretrial matters as may be appropriate." (*Id.*).

### III. *Analysis*

#### A. Subject Matter Jurisdiction

"It is . . . axiomatic that the inferior federal courts are courts of limited jurisdiction. They are 'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)). Accordingly, "it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Id.* *See also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514, (2006) ("[C]ourts, including this Court, have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."). "When a plaintiff files suit in federal court, [the plaintiff] must allege facts that, if true, show federal subject matter jurisdiction over [the] case exists." *Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1268 (11th Cir. 2013).

The complaint alleges diversity of citizenship under 28 U.S.C. § 1332 as the sole basis for subject matter jurisdiction. Subject to inapplicable exceptions, § 1332(a)(2) grants district courts "original jurisdiction of all civil actions where the

matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between… citizens of a State and citizens or subjects of a foreign state…" Plaintiff Grupo is alleged to be a Panamanian corporation with its principal place of business in Panama (*see* Doc. 1 at 1), thus making it a citizen of the foreign state of Panama. *See* 28 U.SC. § 1332(c)(1). Defendant Ingvartsen, a natural person, is alleged to be domiciled in, and therefore a citizen of, the state of Alabama.[1] (Doc. 1 at 1). Ingvartsen is also alleged to be the only member of Defendant Energy Subsea, a limited liability company, thus also making Energy Subsea a citizen of Alabama.[2] (Doc. 1 at 1 - 2). Because neither Defendant shares Grupo's citizenship, there is complete diversity among the parties. *See Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) ("Diversity jurisdiction requires complete diversity; every plaintiff must be diverse from every defendant."). Section 1332(a)'s requisite minimum amount in controversy is also satisfied because Grupo expressly seeks damages exceeding $75,000, exclusive of interest and costs. Thus, the undersigned is satisfied that subject matter jurisdiction exists in this action.

---

[1] "Citizenship is equivalent to 'domicile' for purposes of diversity jurisdiction. A person's domicile is the place of his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." *McCormick v. Aderholt*, 293 F.3d 1254, 1257-58 (11th Cir. 2002) (citations, quotations, and footnote omitted).

[2] *See Rolling Greens, MHP, L.P. v. Comcast SCH Holdings, L.L.C.*, 374 F.3d 1020, 1021 (11th Cir. 2004) (per curiam) (for purposes of diversity jurisdiction, "a limited liability company is a citizen of any state of which a member of the company is a citizen").

## B.     Ingvartsen's Response

Ingvartsen's *pro se* response (Doc. 16) was purportedly filed on behalf of both himself and Energy Subsea.  However, as the Court's prior orders (Docs. 17, 19) informed him, Ingvartsen, who is not an attorney licensed to practice in this Court, can defend this action on his own behalf but cannot do so on behalf of Energy Subsea, an artificial entity.  "The rule is well established that...an artificial entity that can act only through agents, cannot appear *pro se*, and must be represented by counsel."  *Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir. 1985).  *See also Nat'l Indep. Theatre Exhibitors, Inc. v. Buena Vista Distribution Co.*, 748 F.2d 602, 609 (11th Cir. 1984) ("[C]orporations must always be represented by legal counsel."). "The general rule applies even where the person seeking to represent [a] corporation is its president and major stockholder[,]" *Palazzo*, 764 F.2d at 1385 – or, as here, in the case of an LLC, its sole, managing member.  Thus, as the Court previously informed Ingvartsen, his "Response filed shall only be on behalf of Defendant Oddgeir Ingvartsen as an individual person."  (Doc. 17 at 2.  *See also* Doc. 19 at 2 ("At present, the Court will only consider the letter previously received on behalf of Defendant Ingvartsen. There is no appropriate response on file for Energy Subsea LLC.")).  Accordingly, the undersigned will hereinafter treat Ingvartsen's response (Doc. 16) as only being filed on his own behalf and will deem Energy Subsea as having filed no response at all.  Nevertheless, given that "there must be strict compliance with the legal prerequisites establishing the court's power to render [a default] judgment[,]" *Varnes*, 674 F.2d at 1369, the undersigned will consider

Ingvartsen's representations as to Energy Subsea in addressing the issues of service of process and personal jurisdiction.[3]

To the extent Ingvartsen's response can be construed as a motion to set aside default,[4] it is due to be denied.    Under Federal Rule of Civil Procedure 55(c), the "court may set aside an entry of default for good cause…"    The Eleventh Circuit has described Rule 55(c)'s "good cause" standard as follows:

> We have … noted that " '[g]ood cause' is a mutable standard, varying from situation to situation." *Compania Interamericana Export–Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996) (citation omitted). While the standard must be construed to have substance, we have nonetheless described it as a "liberal one." *Id.* (citation omitted). As we have explained, " 'good cause' is not susceptible to a precise formula...." *Id.* Rather, we evaluate various factors that may be applicable in a given case. *See id.* For example, courts generally consider whether the default was culpable or willful, whether setting it aside would prejudice the non-moving party, and whether the defaulting party may have a meritorious defense. *Id.* Depending on the circumstances, courts have also considered factors such as "whether the public interest was implicated, whether there was significant financial loss to the defaulting party, and whether the defaulting party acted promptly to correct the default." *Id.* (citation omitted). On the other hand, where a party demonstrates an intentional or willful disregard of the judicial proceedings, good cause to set aside the default does not exist. *Id.* at 951–52.

---

[3] "A defaulted defendant … can defend by challenging the jurisdiction of the court to enter judgment against him. Thus, for example, a defendant in default still can challenge the validity of service of process or contest the court's exercise of personal jurisdiction over him."    *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 864 (11th Cir. 2007) (per curiam) (unpublished).

[4] "A document filed *pro se* is to be liberally construed…"    *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation omitted).    "Yet even in the case of *pro se* litigants this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action."    *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014) (quotation omitted).

*Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1338 n.7 (11th Cir. 2014).

As will be explained herein, Ingvartsen's response does not indicate that he has a meritorious defense to Grupo's claims. Moreover, while he claims that he only received notice of this case on February 16, 2019 (Doc. 16 at 1) – five days after the present motion for default judgment was filed – Grupo has presented evidence indicating that Ingvartsen personally signed for the summons and complaint on October 11, 2018, *see infra.* Ingvartsen has also failed to comply with the District Judge's prior directive "to provide appropriate contact information to the Clerk of Court for the purposes of addressing the current issues before the Court" (Doc. 17 at 2), and he has failed to defend this case or otherwise respond to the Court's orders issued since he filed his response.[5] Accordingly, the undersigned finds that Ingvartsen has failed to show good cause to set aside the default entered against him.

## C. Service of Process

"Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that defendant has not been served." *Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990). In his response, Ingvartsen claims that neither he nor Energy Subsea were served with process in this action, and that they "received notification about this case for the first time on

---

[5] "Most failures to follow court orders are not 'willful' in the sense of flaunting an intentional disrespect for the judicial process. However, when a litigant has been given ample opportunity to comply with court orders but fails to effect any compliance, the result may be deemed willful." *Compania Interamericana Exp.-Imp., S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 952 (11th Cir. 1996)

2.16.2019 emailed from Energy Subsea LLC agent in Florida." (Doc. 16 at 1). The undersigned liberally construes Ingvartsen's response (Doc. 16) as asserting a motion to dismiss under Federal Rule of Civil Procedure 12(b)(5) based on insufficient service of process. In deciding a Rule 12(b)(5) motion, a district court may consider matters outside of the pleadings and make findings of fact based on affidavits and other evidence relevant to the issue. *Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008). "A defendant's actual notice is not sufficient to cure defectively executed service." *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) (per curiam).

Federal Rule of Civil Procedure 4(e) states that, with certain inapplicable exceptions,

> an individual … may be served in a judicial district for the United States by:
>
> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
> > (A) delivering a copy of the summons and of the complaint to the individual personally;
> >
> > (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
> >
> > (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Under Alabama law – the "state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located[,]" Fed. R. Civ. P. 4(e)(1) – service on an individual is also made "by serving the individual…" Ala. R. Civ. P. 4(c)(1). If service is made by certified mail, it is "deemed complete … from the date of delivery to the named addressee or the addressee's agent as evidenced by signature on the return receipt." *Id.* Rule 4(i)(2)(C). For purposes of Alabama Rule 4(i)(2)(C), " 'agent' means a person or entity specifically authorized by the addressee to receive the addressee's mail and to deliver that mail to the addressee. Such agent's authority shall be conclusively established when the addressee acknowledges actual receipt of the summons and complaint or the court determines that the evidence proves the addressee did actually receive the summons and complaint in time to avoid a default." *Id.*

Counsel of record for Grupo has filed a declaration under penalty of perjury, which is in substantial compliance with 28 U.S.C. § 1746, stating that Ingvartsen was served with the summons and complaint via certified mail on October 11, 2018. (Doc. 7 at 1). Attached to the declaration is a return receipt from a certified mailing sent to Ingvartsen at an address in Theodore, Alabama, and which Ingvartsen appears to have signed. (*Id.* at 2). Ingvartsen's unsworn assertions to the contrary do not rebut this evidence of service. Accordingly, the undersigned finds that Ingvartsen has been served with process in this action.

Grupo's counsel also filed a separate declaration stating that Energy Subsea was served via certified mail on October 19, 2018. (Doc. 11 at 1). Attached to that

declaration is a return receipt from a certified mailing sent to Energy Subsea at an address in Pembroke Pines, Florida, "c/o Eric Golomb as its registered agent." (*Id.* at 2). The signature on the receipt, however, does not appear to be Golomb's, and the signatory did not mark whether he or she was the "addressee" or the addressee's "agent." (*See id.*). For its part, Grupo only asserts that "someone" signed for the certified mailing sent to Golomb. (Doc. 18 at 2). However, Ingvartsen's response admits that Energy Subsea's "agent in Florida" sent him notification about this case.6 Moreover, Grupo's reply brief points out that Ingvartsen is listed as Energy Subsea's registered agent in Alabama at the Theodore address where Ingvartsen was personally served. (*See* Doc. 18-1 at 2). Considering the foregoing, the undersigned finds that Energy Subsea has also been served with process in this action.

## D.      Personal Jurisdiction and Venue

Liberally construed, Ingvartsen's response also requests that this action be dismissed under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, or that it be transferred "to Florida Court…." (Doc. 16). The undersigned finds that the record supports a finding of personal jurisdiction over both Ingvartsen and Energy Subsea. "A federal court sitting in diversity undertakes a two-step inquiry to determine whether personal jurisdiction exists. First, the exercise of jurisdiction must be appropriate under the forum state's

---

6 *Cf. Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1342 (11th Cir. 2011) (holding that an unsworn statements could nevertheless carry evidentiary weight when it was against that person's interest).

long-arm statute, which delimits the exercise of personal jurisdiction under state law.   Second, the exercise of jurisdiction must comport with the Due Process Clause of the Fourteenth Amendment." *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018) (citations omitted).   "Whether specific or general, the exercise of personal jurisdiction over a defendant must comport with due process. The touchstone of this analysis is whether the defendant has certain minimum contacts with the state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.   The minimum contacts inquiry focuses on the relationship among the defendant, the forum, and the litigation.   This inquiry ensures that a defendant is haled into court in a forum state based on the defendant's own affiliation with the state, rather than the random, fortuitous, or attenuated contacts it makes by interacting with other persons affiliated with the state." *Id.* (citations and quotations omitted).   "In specific personal jurisdiction cases, we apply the three-part due process test, which examines: (1) whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.' … The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, "a defendant must make a 'compelling case' that the exercise of jurisdiction

would violate traditional notions of fair play and substantial justice." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013)

"Alabama's long-arm statute authorizes Alabama courts to assert jurisdiction to the fullest extent constitutionally permissible." *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004) (citing Ala. R. Civ. P. 4.2(a)(2); *Sieber v. Campbell*, 810 So. 2d 641, 644 (Ala. 2001)).[7]  Ingvartsen also claims that the Court does not have jurisdiction over the Defendants because he "is not a resident of Alabama" and Energy Subsea "is registered, located and operates in Florida…" (Doc. 16 at 1).  Even accepting those unsworn claims as true for purposes of the present motion,[8] "[d]irect contact by a nonresident defendant with the forum is not required[;] a nonresident defendant may be subject to specific jurisdiction even if his actions giving rise to the suit occurred outside the forum state and he had no direct contact with the plaintiff." *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1357 (11th Cir. 2000).

---

[7] "[W]hen a defendant moves to dismiss for lack of personal jurisdiction, an evidentiary hearing is not required. If the district court does not hold a hearing, the plaintiff must establish a prima facie case of personal jurisdiction. *Morris v. SSE, Inc.,* 843 F.2d 489, 492 (11th Cir.1988). A prima facie case is established when the plaintiff presents sufficient evidence by way of affidavits or deposition testimony to survive a motion for a directed verdict. *Id.* The court must construe the allegations in the complaint as true if they are not contradicted by defendant's evidence. When defendant's evidence conflicts with plaintiff's, the district court must construe all reasonable inferences in favor of plaintiff. *Id.*" *Mut. Serv. Ins.*, 358 F.3d at 1319 n.6.

[8] As noted previously, Ingvartsen personally signed for the summons and complaint delivered to him at an address in Alabama.  Moreover, Grupo has presented evidence showing that Energy Subsea has been registered with the Alabama Secretary of State to do business in Alabama since April 6, 2016.  (*See* Doc. 18-1 at 2).

Grupo's complaint alleges enough uncontroverted facts to demonstrate that this Court at least has specific jurisdiction over both Defendants. Grupo alleges that "all of the events comprising Grupo's claims in this matter arise out of business transactions and events that took place within the state of Alabama, on the part of Defendants, as well as Defendants' supplying of certain services and goods within the State of Alabama. Furthermore, the contracts negotiated and entered into by Grupo and Defendants were negotiated and executed, at least partially, within the State of Alabama. Additionally, Defendants agreed to perform the services comprising the subject matter of this litigation at a location in Mobile, Alabama." (Doc. 1 at 3, ¶ 8). The complaint then proceeds to provide a detailed account of Grupo's business dealings with the Defendants. (*See id.* at 3 – 14, ¶¶ 10 – 60). Ingvartsen's unsworn, conclusory assertion that the "court have [sic] been given a description of this cases [sic] events that are not correct" (Doc. 16 at 2) is insufficient to rebut Grupo's factual allegations.[9]

Because venue, unlike personal jurisdiction, does not concern "the jurisdiction of the court to enter judgment against" a defendant,[10] neither Ingvartsen nor Energy

---

[9] "When a defendant challenges personal jurisdiction by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction. The burden, however, does not shift back to the plaintiff when the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Louis Vuitton*, 736 F.3d at 1350 (citation and quotations omitted).

[10] *See, e.g.*, *Lindahl v. Office of Pers. Mgmt.*, 470 U.S. 768, 793 n.30 (1985) ("Venue provisions come into play only after jurisdiction has been established and concern the place where judicial authority may be exercised; rather than relating to the power of a court, venue relates to the convenience of litigants and as such is subject

Subsea, who are both in default, can raise improper venue as a defense. *See Tyco Fire*, 218 F. App'x at 864. Regardless, the record sufficiently demonstrates that venue in this judicial district is proper under at least one of the provisions of 28 U.S.C. § 1391(b). *See* 28 U.S.C. § 1391(b) ("A civil action may be brought in-- **(1)** a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; **(2)** a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or **(3)** if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.").

### E.    Well-Pleaded Factual Allegations and Causes of Action

The well-pleaded allegations of fact in the complaint (Doc. 1)[11] establish the following:

In September 2017, Grupo entered into a contract with Dirección Nacional de Protección Civil y Administración del Desastre and Petróleos de Venezuela, S.A., to provide all services and equipment necessary to locate a LearJet 25D aircraft and a Gulfstream III aircraft which had crashed into waters located with the territorial jurisdiction of Venezuela. Grupo's services were to also include providing all

---

to their disposition." (quotation marks omitted)).

[11] "An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied."  Fed. R. Civ. P. 8(b)(6).

equipment necessary to recover 5 bodies from the lost LearJet 25D and 9 bodies from the lost Gulfstream III and the "black boxes" from each of the lost aircraft. The equipment that was to be provided by Grupo was to include, but was not be limited to, a vessel suitable for conducting the location and recovery operations, as well as appropriate remotely operated vehicles (ROVs).   (Doc. 1, ¶ 10).

To perform the aforementioned contract, Grupo had to obtain some of the equipment (i.e. suitable vessel with crane, ROVs, side scan sonar equipment, etc.) needed to perform the job from a third party.   In September 2017, Grupo, through its President, Francisco Martinez, began discussions with Ingvartsen and Mr. Atle Haugvaldstad, as representatives of Energy Subsea. It is believed that Ingvartsen is the managing member of Energy Subsea and a related company, Ingvartsen AS. The discussions with Haugvaldstad and Ingvartsen led to Ingvartsen and Haugvaldstad proposing to Grupo to provide, through Energy Subsea, the following equipment needed to perform the location and recovery operations relative to the aircraft:

- DP2 vessel, minimum 27 passenger capacity;

- 20T crane/ A Frame;

- Work class ROV;

- OBS 2 class ROV;

- OBS ROV;

- Side Scan Sonar;

- HPR System; and

• Accommodations and office units.

(the "Equipment"). (*Id.*, ¶¶ 11 – 13).

The proposal from Ingvartsen and Haugvaldstad was that they would, through Energy Subsea, provide the Equipment to Grupo for a lump sum of $650,000 excluding fuel, lubricants and water, with $450,000 paid for mobilization of the Equipment and the first 30 days of operation and $200,000 to be paid after the first 30 days of operation. The fuel, lubricants, and water were estimated to add approximately $105,000 to the cost. The proposal was that mobilization of all Equipment would begin upon payment by Grupo of the first $450,000 payment. On September 19, 2017, Grupo, through its employee, Angel Omana,[12] reiterated to Ingvartsen and Haugvaldstad that time was of the essence in the performance of the contract and that Grupo's clients expected the vessel being provided by Ingvartsen and Haugvaldstad to depart for Venezuela no more than 4 days after the first payment was made. (Doc. 1, ¶¶ 14 – 16).

Initially, a document entitled "Contract for the Provision of ROV, Support Vessel and Associated Work (Based on BIMCO Supplytime 2005)" was executed between Grupo and Ingvartsen AS ("Ingvartsen Contract"). The Ingvartsen Contract was dated September 27, 2017 and memorialized the agreement to provide the Equipment to Grupo for a total of $650,000 excluding fuel, lubricants and water.

_____

[12] Included as an exhibit to Grupo's motion for default judgment is an unsworn declaration from Omana dated January 30, 2019. (Doc. 15-2). Omana's declaration, which substantially complies with the requirements of 28 U.S.C. § 1746, verifies many of the complaint's factual allegations while also providing additional details.

The Ingvartsen Contract specified that Ingvartsen AS would provide the Equipment to Grupo for an initial payment of $450,000 for mobilization of the necessary equipment and the first 30 days of operation and $200,000 to be paid after the first 30 days of operation. The work was defined to be:

- Side scan sonar run to localize lost aircraft: one Lear Jet 25 and one Gulfstream III;

- ROV operations to recover casualties (5 bodies plus 7 bodies) and aircraft black boxes, if any;

- Survey of all parts and recovery of parts as instructed by client; and

- Sides scan survey of Dragon field.

Mobilization of the Equipment was to start as soon as payment was received by Ingvartsen AS. (*Id.*, ¶¶ 17 − 19).

On the same date the Ingvartsen Contract was executed, a Contract for the Provision of ROV, Support Vessel and Associated Work (Based on Bimco Supplytime 2005) was also executed by and between Grupo and Energy Subsea ("Energy Subsea Contract").[13] The Energy Subsea Contract was identical to the Ingvartsen Contract and was intended to supersede the Ingvartsen AS Contract to make the contracting parties Grupo and Energy Subsea. On October 2, 2017, Haugvaldstad sent an email to Grupo advising that Energy Subsea would have a vessel with all necessary equipment ready to sail from the United States within 5 days of receipt of the first payment of $450,000. At that same time, Haugvaldstad advised that transit time

---

[13] Grupo has filed a copy of the Energy Subsea Contract as Exhibit 1A to Omana's declaration. (*See* Doc. 15-2 at 7 − 22).

from the United States to Venezuela would be 7 days, specifically leading Grupo to expect and believe that within 12 days of its payment of $450,000, Energy Subsea would be onsite in Venezuela with all necessary equipment ready to begin the location and recovery operations. This timing was critically important to Grupo so that it could fulfill the expectations of its clients. Energy Subsea, Ingvartsen and Haugvaldstad were well aware of these expectations and the importance of timely performance of the Energy Subsea Contract. (*Id.*, ¶¶ 20 – 21).

Grupo wired $450,000 to Ingvartsen AS on October 3, 2017. The wire was made to Ingvartsen AS, for the benefit of Energy Subsea. Upon information and belief, the $450,000 was transferred by Ingvartsen AS to Energy Subsea. Energy Subsea was the ultimate recipient of the $450,000. On October 8, 2017, Haugvaldstad represented to Grupo that he was 90% sure on what vessel would be used to perform the job and that mobilization for the job was imminent. On October 16, 2017, Grupo again advised Ingvartsen and Haugvaldstad that time was of the essence and that timely performance of the Energy Subsea Contract was critically important to avoid significant consequences and damages, especially given that Grupo had previously advised its client that a vessel had been selected and was available to perform the job. The advice that Grupo gave its clients was based on promises and representations made to Grupo by Ingvartsen and Haugvaldstad. Notwithstanding the receipt of $450,000, Energy Subsea did not mobilize the Equipment in October 2017. (*Id.*, ¶¶ 22 – 25).

Instead of the mobilizing to perform the job, as promised, Ingvartsen, advised Grupo on October 17, 2017, after he had received Grupo's $450,000 payment, that the original vessel which Energy Subsea intended to use to perform the job was committed to hurricane relief/recovery efforts in Puerto Rico and would be unavailable to perform the job. Because it was unable to mobilize the equipment in a timely fashion to perform the job, Energy Subsea returned $100,000 of the initial payment to Grupo. The $100,000 was returned to Grupo to enable it to make arrangements for side scan sonar operations in Venezuela using a different vessel. The side scan sonar operation was ultimately performed with side scan sonar equipment provided by Energy Subsea and a PDVSA vessel, with two Energy Subsea personnel and two Grupo personnel. The side scan sonar operations were completed between October 13, 2017 to November 3, 2017.[14] The value of the work performed by Energy Subsea in connection with the side scan sonar operations is estimated to be $51,600. (Doc. 1, ¶¶ 26 – 29).

In November 2017, Ingvartsen demanded an additional $200,000 from Grupo, which he claimed was needed to hire an alternative vessel to perform the remaining work. In response to Ingvartsen's demands, and in accordance with Ingvartsen's instructions, Grupo wired an additional $200,000 to Energy Subsea on November 3, 2017. After this additional payment, Ingvartsen advised Grupo that notwithstanding his prior representations, he in fact could not book a vessel as

---

[14] While paragraph 28 of the complaint provides the date as "November 3, 2107" (Doc. 1 at 8), the undersigned assumes that is a typo and that Grupo meant the year to be 2017.

promised. Despite the fact that by November 3, 2017, Ingvartsen had, through his companies, received the net amount of $550,000 from Grupo, mobilization of the equipment had not begun, as required by the Energy Subsea Contract. Grupo repeatedly requested updates from Ingvartsen on the status of mobilization, but no updates were provided and no performance was forthcoming by Ingvartsen. As of January 2018, mobilization had still not begun. (*Id.*, ¶¶ 30 − 34).

In January 2018, Ingvartsen advised Grupo that the first vessel he had planned to use was now available, but he demanded i) an additional cash payment of $200,000 from Grupo and ii) that Grupo provide 750 metric tons of fuel with an estimated value of $450,000 directly to Energy Subsea. Even though the demands were being made for additional money by Ingvartsen on behalf of Energy Subsea, Grupo was optimistic that the job would still be performed and felt like it had no alternative other than to cede to the demands of Ingvartsen to get the job done, especially since Ingvartsen was presenting a plan for mobilizing. Grupo, thus, delivered an additional cash payment of $200,000 to Energy Subsea in January 2018. In February, Grupo delivered approximately 800 metric tons of fuel to Ingvartsen with a value of $560,000. Despite the fact that by February 2018, Grupo had paid Energy Subsea a total of $1,310,000, mobilization did not begin. (*Id.*, ¶¶ 35 − 38).

Instead of mobilizing to perform the job, Ingvartsen continually made excuses of why mobilization had not occurred, while simultaneously refusing to provide a date by which mobilization would begin and be completed and the date on which a

vessel with all necessary equipment would depart for Venezuela. Grupo was concerned by the lack of progress and the fact that Ingvartsen would not provide a hard date for mobilization and did not appear to be making progress towards performing the job. Every time Grupo's representatives would raise a concern with Ingvartsen about the lack of progress and the lack of evidence of an intent to perform, Ingvartsen would become angry and refuse to provide specific answers to questions being posed. Grupo did not perceive itself to have viable options other than to continue to demand that Ingvartsen perform, since it had already paid Energy Subsea and Ingvartsen $1,310,000. (*Id.*, ¶¶ 39 – 41).

Ingvartsen repeatedly assured Grupo that he would perform, although he would not say when that would occur. Then, after months of virtually no material progress being made by Energy Subsea and Ingvartsen, Ingvartsen advised Grupo in June 2018 that, to perform the job, Grupo would have to pay Energy Subsea approximately $1,246,800 in additional money. Energy Subsea, at the same time, was asserting that the time on the job would be dramatically shortened. The demand in June 2018 would have brought the total amount payable to approximately $2,556,800 ($1,310,000 paid plus the demand for the additional $1,246,800). At the same time that Ingvartsen demanded the additional $1,246,800 (for a total of $2,556,800) to perform a job for which it had originally quoted a price of $650,000, Ingvartsen advised that he and Energy Subsea did not have and would not return any of the money he and Energy Subsea had already received from Grupo. Ingvartsen claimed that he spent almost all of the money ($1,310,000) preparing the

Equipment for the job. Ingvartsen told Grupo that if it refused to cede to his demands for an additional $1,246,800, Grupo would have to sue him and Energy Subsea to get any of its money back, as he and Energy Subsea would not voluntarily return it, despite the fact that he had failed to perform. (*Id.*, ¶¶ 42 – 44, 46).

Ingvartsen and Energy Subsea have not earned any of the $1,310,000 of Grupo's money, which they are presently holding, except for the $51,600 attributable to work performed by Energy Subsea in connection with the side scan sonar operations. Neither Ingvartsen nor Energy Subsea has ever provided an accounting for the $1,310,000 of money that they took from Grupo. At or about the same time that Energy Subsea and Ingvartsen demanded an additional $1,246,800 to perform the job, they began attempting to liquidate some of Energy Subsea's assets by listing significant equipment for sale on various social media and web sites. In light of these developments, Grupo contracted with another third party to perform the job to avoid claims for delay damages and breach of contract being asserted against it by its clients. (*Id.*, ¶¶ 45, 48, 50 – 51).

Because of Energy Subsea's failure to perform the contract for the quoted price of $650,000, Grupo was forced to contract with Bordelon Marine to complete the job. Grupo entered into a contract with Bordelon Marine on July 10, 2018, which was performed timely and flawlessly for the price of $1,727,000. The difference between Grupo's quoted priced of $650,000 (excluding fuel, lubricants and water) and the Bordelon Marine price of $1,727,000 (inclusive of fuel, lubricants and water) is $972,000. Grupo has been damaged in that amount as a result of Energy

Subsea's failure to perform. To date, neither Energy Subsea nor Ingvartsen has returned Grupo's money to it. (*Id.*, ¶¶ 52 − 54).

Based on the foregoing allegations, Grupo's complaint asserts a cause of action against Energy Subsea for breach of contract, and causes of action against both Defendants for fraud, deceptive trade practices in violation of the Alabama Deceptive Trade Practices Act, and unjust enrichment. (*See id.* at 14 − 17).

### F.    Applicable Substantive Law

Grupo's present motion moves for default judgment on its breach of contract, unjust enrichment, and fraud claims. Grupo argues for the application of Alabama substantive law to those claims but provides no choice-of-law analysis as to why it should, and considering the well-pleaded allegations above, Grupo's claims − centering around a contract to provide equipment and services to assist in locating two submerged crashed planes for purposes of recovering bodies and items from the wreckage − appear to be maritime in nature. *See Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 23 − 24 (2004) ("To ascertain whether a contract is a maritime one, we cannot look to whether a ship or other vessel was involved in the dispute, as we would in a putative maritime tort case. Nor can we simply look to the place of the contract's formation or performance. Instead, the answer depends upon the nature and character of the contract, and the true criterion is whether it has reference to maritime service or maritime transactions." (citations and quotations omitted)); *Odyssey Marine Expl., Inc. v. Unidentified Shipwrecked Vessel or Vessels*, 636 F.3d 1338, 1340 (11th Cir. 2011) (holding that "contracts to provide research to assist in

locating and recovering a sunken vessel are maritime in nature"). "When a contract is a maritime one, and the dispute is not inherently local, federal law controls the contract interpretation." *Norfolk S.*, 543 U.S. at 22–23. "[T]he law is [also] clear that quasi-contractual claims[, such as unjust enrichment,] may be considered by the federal courts in admiralty if they arise out of maritime contracts, *see Archawski v. Hanioti*, 350 U.S. 532, 536, 76 S. Ct. 617, 100 L. Ed. 676 (1956), or other inherently maritime transactions..." *Peninsular & Oriental Steam Nav. Co. v. Overseas Oil Carriers, Inc.*, 553 F.2d 830, 835 (2d Cir. 1977).

Substantive federal maritime law would still apply to maritime claims even where, as here, only invoked diversity jurisdiction under § 1332(a) has been invoked,[15] and admiralty jurisdiction under 28 U.S.C. § 1333 has not been invoked. *See Misener Marine Const., Inc. v. Norfolk Dredging Co.*, 594 F.3d 832, 837 & n.11 (11th Cir. 2010) ("Norfolk's dredging contract, and the dispute arising therefrom, falls within the federal courts' maritime jurisdiction ... Norfolk has argued that they pleaded diversity jurisdiction in their counterclaim, thus Georgia law and the G[eorgia Prompt Pay Act] should apply. Even if this case were filed under diversity, substantive maritime law would still apply. *See Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 411, 74 S. Ct. 202, 206, 98 L. Ed. 143 (1953) (finding that substantive maritime law applied in a maritime tort even though the suit was filed under diversity jurisdiction). '[T]he substantial rights of an injured person are not to be

---

[15] "Suits on maritime contracts may be brought in the federal courts under the head of diversity jurisdiction." *Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 360 n.2 (1962).

determined differently whether his case is labelled 'law side' or 'admiralty side' on a district court's docket.' *Id.*"); *Harville v. Johns-Manville Prod. Corp.*, 731 F.2d 775, 779 (11th Cir. 1984) ("The defendants have properly invoked the diversity jurisdiction of the federal courts. 28 U.S.C.A. § 1332. They nevertheless ask this Court to apply the substantive federal law of admiralty, rather than the law of Alabama, to their claims. The plaintiffs have refrained from asserting admiralty jurisdiction, 28 U.S.C.A. § 1333(1), apparently in order to obtain a jury trial, which, although not generally available in admiralty, can be had if there is also a basis for diversity jurisdiction … The answer to the question whether admiralty jurisdiction *could* apply is important to the choice of law issue, however. '[W]hile jurisdiction to decide the litigation may be concurrent with state courts or invoked in a federal court on some independent basis,' if the dispute is also within the scope of admiralty jurisdiction, 'maritime law determines the rights of the parties.' *Continental Casualty Co. v. Canadian Universal Insurance Co.*, 605 F.2d 1340, 1344 (5th Cir.1979), *cert. denied*, 445 U.S. 929, 100 S. Ct. 1317, 63 L.Ed.2d 762 (1980); *Branch v. Schumann*, 445 F.2d 175, 177-78 (5th Cir. 1971)." (footnotes omitted)).[16]

---

[16] *See also Gibbs ex rel. Gibbs v. Carnival Cruise Lines*, 314 F.3d 125, 132-33 (3d Cir. 2002) ("Since we conclude that this case sounds in admiralty, we apply federal admiralty law and not the law of New Jersey or any other state. That the District Court took this case under diversity jurisdiction, rather than admiralty jurisdiction under 28 U.S.C. § 1333, does not affect this determination. *See Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 410–11, 74 S. Ct. 202, 98 L. Ed. 143 (1953) (holding that courts apply substantive admiralty law to claims that sound in admiralty regardless of whether the complaint invokes diversity or admiralty jurisdiction)… Thus, for cases such as this that sound in admiralty, we need not look to the general choice of law rules articulated in *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938), … that typically apply to suits brought in diversity jurisdiction.").

Because Grupo has failed to show that application of Alabama substantive law to its claims is proper, the undersigned will recommend that Grupo's present motion for default judgment be denied, without prejudice to its ability to again seek default judgment through a new motion that demonstrates and applies the proper substantive law to its claims.

## IV.    *Conclusion & Recommendations*

Under 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72(b)(1), and S.D. Ala. GenLR 72(a)(2)(S), and in accordance with the foregoing analysis, the undersigned **RECOMMENDS** that Ingvartsen be **DENIED** any relief requested in his *pro se* response (Doc. 16), and that Grupo's motion for default judgment (Doc. 15) be **DENIED without prejudice** to its ability to again seek default judgment demonstrating and arguing the proper applicable substantive law.

The Clerk of Court is **DIRECTED** to email a copy of this Report and Recommendations and its accompanying Notice of Electronic Filing (NEF) to Ingvartsen at oi@energysubsea.com, and to email a copy of this Report and Recommendations and its accompanying NEF to Energy Subsea at office@energysubsea.com.[17]

The Clerk of Court is further **DIRECTED** to separately mail copies of this Report and Recommendations and its accompanying NEF to both Ingvartsen and Energy Subsea at the following addresses:

- 5128 Mobile South Street, Theodore, AL 36528

---

[17] *See* http://www.energysubsea.com/contact (last visited July 2, 2019).

- 2000 NW 150th Avenue, Suite 1306, Pembroke Pines, FL 33028

- 407 Lincoln Rd., Ste. 6C, Miami Beach, FL 33139

- 1480 NE 129th Street, North Miami, FL 33161 [18]

   **DONE** this the 2nd day of July 2019.

*/s/ Katherine P. Nelson*        
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[18] The last two addresses are Energy Subsea's principal mailing address and principal address, respectively, on file with the Alabama Secretary of State: http://arc-sos.state.al.us/cgi/corpdetail.mbr/detail?corp=375522&page=name&file=&type=ALL&status=ALL&place=ALL&city (last visited July 2, 2019).

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.